UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DANIEL KISS,

                         Plaintiff,           **OPINION & ORDER**

  - against -                             No. 22-CV-10663 (CS)

JANET KENNY and DEBRA RUBIN,

                         Defendants.
-------------------------------------------------------------x

Appearances:

Daniel Kiss
Poughkeepsie, NY
*Pro Se Plaintiff*

Eric E. Rothstein
Rothstein Law PLLC
New York, New York
*Counsel for Defendant Janet Kenny*

Anthony J. Centone
Anthony J. Centone, P.C.
Mohegan Lake, New York
*Counsel for Defendant Debra Rubin*

Seibel, J.

      Before the Court are the motion of Defendant Debra Rubin ("Debra") to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) and the motion of Defendant Janet Kenny ("Janet") to dismiss Plaintiff's Amended Complaint pursuant to FRCP 12(b)(1), 12(b)(6) and 12(h)(3).  (ECF Nos. 24, 25.)  For the following reasons, the Amended Complaint is dismissed pursuant to FRCP 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction.

I.     **BACKGROUND**

    A.     **Facts**

For purposes of this motion, the Court accepts as true the facts, but not the conclusions, alleged by Plaintiff in the Amended Complaint. (*See* ECF No. 23 ("AC").) I briefly summarize the most relevant facts below.

From June 2019 to February 13, 2020, Plaintiff resided at the home of his now-deceased friend, Sharon Kenny ("Sharon"), in Poughkeepsie, New York (the "Residence"). (*Id.* ¶ 2.) Sharon and Defendants were apparently sisters. (*See id.* ¶ 88.) Sharon had entrusted Plaintiff since 2010 with taking care of her father, Jules Kenny ("Jules"), part-time at an agreed-upon hourly rate. (*Id.* ¶ 10.) After Sharon divorced her husband in 2018, she asked Plaintiff if he would increase the hours he cared for Jules. (*Id.* ¶ 11.) Plaintiff was willing, but at the time he resided in New Jersey. (*Id.* ¶ 12.) Sharon proposed providing Plaintiff with exclusive access to a second-floor bedroom at the Residence in exchange for Plaintiff caring for Jules and contributing to expenses, maintenance, and repair. (*Id.*) In June 2019, Plaintiff agreed to the proposal and moved into the Residence with his wife, taking exclusive control over the second-floor bedroom and having shared access to the rest of the Residence, except for Sharon's bedroom. (*See id.* ¶¶ 13-15.) From June 2019 to December 17, 2019, Plaintiff cared for Jules, contributed to the maintenance and expenses of the Residence, and provided companionship for Sharon. (*Id.* ¶ 14.)

On December 17, 2019, Sharon passed away. (*Id.* ¶ 16.) Immediately after her death, her family, including Defendants, asked Plaintiff to continue to live at the Residence. (*Id.* ¶ 17.) Plaintiff and his wife agreed to stay and continue the arrangement they had with Sharon, with the understanding that their tenancy would continue until the conclusion of the probate proceedings for Sharon's estate, which was expected to be on March 20, 2020. (*Id.* ¶¶ 17-18.) Jules

relocated to a senior care facility on January 29, 2020, but Defendants urged Plaintiff and his wife to remain at the Residence for security and insurance purposes until the probate proceedings ended. (*Id.* ¶¶ 21-22.) On the morning of February 13, 2020, Janet called Plaintiff and informed him that Jules had died at the facility. (*Id.* ¶ 26.) They did not discuss Plaintiff's occupancy of the Residence during that phone call, but later that afternoon, Janet called the New York State Police and the Town of Hyde Park, reporting that she had dominion over the property and that Plaintiff was in the Residence without authorization and possibly removing property that did not belong to him. (*Id.* ¶¶ 27-28.) Town police and a state trooper responded and, after searching the Residence, Plaintiff's wife's car, and Plaintiff's van, and placing some of Plaintiff's personal items in the garage, they ordered Plaintiff and his wife to surrender their keys and leave their belongings in the home. (*See id.* ¶¶ 30-31, 36-37, 41, 44, 50-51.) The officers warned them not to return to the Residence, and to contact Janet to recover their items. (*Id.* ¶ 52.) Janet later confirmed to the police that nothing had been stolen from the Residence, (*id.* ¶ 53), but Plaintiff has only been able to recover a computer, his glasses and his cash, (*id.* ¶ 55). In January 2022, a New York State trooper called and directed him to stop contacting Defendants to recover his property. (*Id.*).

  **B.** **Procedural History**

  Plaintiff filed this lawsuit on December 19, 2022, asserting claims for conversion and malicious prosecution. (ECF No. 1.) On April 19, 2023, counsel for Debra filed a notice of appearance that was improperly docketed as an Answer. (ECF No. 12.) On April 20, 2023, counsel for Janet filed a pre-motion letter in anticipation of a motion to dismiss, asserting, among other arguments, that the complaint failed to adequately plead diversity-based subject matter jurisdiction because the amount-in-controversy requirement was not met. (ECF No. 15 at 1.) On

April 27, 2023, counsel for Debra filed a pre-motion letter asserting the same.  (ECF No. 19 at 1.)  The Court held a pre-motion conference, (*see* Minute Entry dated May 22, 2023), and granted Plaintiff leave to amend the complaint.  On July 6, 2023, Plaintiff submitted a list of assets totaling $154,823 that Defendants allegedly have refused to return to him.  (ECF No. 22 ("P's July 6 Letter").)  Plaintiff then filed his Amended Complaint on July 7, 2023, asserting claims for unlawful eviction and invasion of privacy, conversion, breach of lease, estoppel, and negligent infliction of emotional distress.  (ECF No. 23.)  The instant motions followed.  (ECF Nos. 24, 25.)

## II.      LEGAL STANDARD

### A.      Motion to Dismiss for Lack of Subject Matter Jurisdiction

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint."  *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated and superseded on other grounds on reh'g en banc*, 585 F.3d 559 (2d Cir. 2009).[1]  "Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Id.*  "When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists, and the district court may examine evidence outside of the pleadings to make this determination."  *Id.*  "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.  The Court will send Plaintiff copies of any unpublished decisions cited in this ruling.

4

favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd on other grounds*, 561 U.S. 247 (2010).

When a defendant moves to dismiss both for lack of subject matter jurisdiction and on other grounds such as failure to state a claim upon which relief can be granted, the Court must address the issue of subject matter jurisdiction first. *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

### B. *Pro se* Plaintiffs

Complaints by *pro se* plaintiffs are to be examined with "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010), interpreted "to raise the strongest arguments that they suggest," *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*). But "[n]otwithstanding the liberal pleading standards afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if they lack subject matter jurisdiction." *Torres v. Blackstone Group*, No. 18-CV-6434, 2019 WL 4194496, at *2 (S.D.N.Y. Sept. 3, 2019), *aff'd*, 836 F. App'x 49 (2d Cir. 2020).

In the Amended Complaint, Plaintiff notes that it was prepared with the assistance of the New York Legal Assistance Group ("NYLAG") Legal Clinic for Pro Se Litigants. (*See* AC at 1 n.1.) Some courts have limited or withdrawn special solicitude where a *pro se* plaintiff has received help from NYLAG. *See, e.g.*, *Bizelia v. Clinton Towers Hous. Co.*, No. 20-CV-8065, 2022 WL 1747763, at *3 (S.D.N.Y. May 31, 2022); *Littlejohn v. Consol. Edison Co. of New York, Inc.*, No. 18-CV-6336, 2019 WL 3219454, at *1 n.1 (S.D.N.Y. July 17, 2019). I "remain[] cognizant, however, that if *pro se* litigants who receive limited assistance from NYLAG lose all protections afforded to them, NYLAG faces a catch-22: providing less than full representation

5

will harm litigants by eliminating the special care otherwise afforded." *Karupaiyan v. CVS Health Corp.*, No. 19-CV-8814, 2021 WL 4341132, at *6 (S.D.N.Y. Sept. 23, 2021). Thus, I will afford special solicitude to the Amended Complaint.

On November 3, 2023, Plaintiff filed a memorandum in opposition to Janet's motion, asking the Court for leave to amend the Amended Complaint and to read any new facts asserted in the opposition memorandum as supplementing the Amended Complaint. (*See* ECF No. 32 ("P's Opp.") at 1.) I will consider the factual allegations made in the opposition memorandum to the extent those allegations are consistent with the Amended Complaint. *See Braxton v. Nichols*, No. 08-CV-8568, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) ("[A]llegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss."). I also consider Plaintiff's July 6, 2023 letter. *See Arar*, 532 F.3d at 168 ("[T]he district court may examine evidence outside of the pleadings to [determine if subject matter jurisdiction exists].").

### III. DISCUSSION

#### A. Lack of Subject Matter Jurisdiction

"A federal court's lack of subject matter jurisdiction is not waivable by the parties, and we must address jurisdictional questions before reaching the merits." *Holt v. Town of Stonington*, 765 F.3d 127, 130 (2d Cir. 2014). "Lack of subject matter jurisdiction may be raised at any time by a party or by the Court *sua sponte*." *Adames v. Taju*, 80 F. Supp. 3d 465, 467 (E.D.N.Y. 2015) (citing *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009)). "Where a court lacks subject matter jurisdiction, it must dismiss the complaint in its entirety." *Id.*; *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

6

"[A] federal district court's subject matter jurisdiction is available when a federal question is presented or, if asserting claims under state law under the court's diversity jurisdiction, when, among other circumstances, the plaintiff is a citizen of an American State, the defendant is a citizen of another American State or a citizen or subject of a foreign country, and the amount in controversy exceeds the sum or value of $75,000." *Pesic v. Mauritius Int'l Arb. Ctr. Ltd.*, No. 23-CV-1100, 2023 WL 2989072, at *4 (S.D.N.Y. Apr. 17, 2023); *see* 28 U.S.C. §§ 1331, 1332. Plaintiff alleges no federal question in the Amended Complaint. Therefore, the only basis for this Court's jurisdiction would be diversity of citizenship.

### 1. Domicile

"An individual's citizenship, for diversity purposes, is determined by the individual's domicile, not the individual's residence." *SBL Enters. LLC v. Keystone Cap. Corp.*, No. 21-CV-4459, 2021 WL 2000365, at *2 (S.D.N.Y. May 19, 2021). "The terms are not synonymous; one can reside in one place but be domiciled in another." *Id.* Similarly, "[a] party may have multiple residences, but only one domicile." *Connolly v. Spielman*, 999 F. Supp. 270, 272 (N.D.N.Y. 1998). An individual's domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 53 (2d Cir. 2019); *see Texas v. Florida*, 306 U.S. 398, 424 (1939) ("Residence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of domicile.").

"Courts have long held that a statement of residence, unlike domicile, tells the court only [w]here the parties are living and not of which state they are citizens." *SBL Enters.*, 2021 WL 2000365, at *2. "Accordingly, it is well-established that allegations of residency alone cannot establish citizenship." *Id.*

In the Amended Complaint, Plaintiff alleges that he is a "resident" of Poughkeepsie, New York, Janet is a "resident" of Florida, and Debra is a "resident" of Missouri. (AC ¶¶ 1, 5.) Plaintiff makes two additional statements in the Amended Complaint regarding Janet's "home" and where she "lived," *id.* ¶ 28 ("Janet . . . acknowledged that she was calling from her home in Florida"); *id.* ¶ 25 ("Janet, who lived in Florida, insisted that Plaintiff could not remove any items of personal property"). In Plaintiff's opposition memorandum, he also states that "Defendant Janet Kenny . . . made calls from her home in Florida." (P's Opp. at 2.) Plaintiff does not make any additional allegations in the Amended Complaint or opposition memorandum as to Debra's domicile or his own domicile.

Plaintiff argues that there is no defect in the pleading of diversity because the Amended Complaint states that Janet was calling from her home in Florida. (P's Opp. at 5; *see* AC ¶ 28.) There are many people with a home in Florida who are domiciled elsewhere, but even if I accept that Plaintiff's allegation that Janet "lived in Florida," (AC ¶ 25), means that Florida was her domicile, *see Van Buskirk*, 935 F.3d at 53 (domicile is "the place where a person has his true fixed home and principal establishment"), citizenship is still not adequately pleaded because the Court must be able to determine that there is complete diversity among the parties, *Barton v. Ne. Transp., Inc.*, No. 21-CV-326, 2022 WL 203593, at *6 (S.D.N.Y. Jan. 24, 2022) ("[I]n a case with multiple defendants, if a single defendant is from the same state as the plaintiff, the district court loses diversity jurisdiction over the entire action."); *Wynston Hill Cap., LLC v. Crane*, 628 F. Supp. 3d 540, 545 (S.D.N.Y. 2022) ("It is black-letter law that 'complete diversity,' in which the citizenship of each plaintiff is diverse from the citizenship of each defendant, must exist for a district court to exercise diversity jurisdiction over an action.").

8

Because Plaintiff has not provided facts regarding his or Debra's domicile, and because allegations of residency are not sufficient to plead diversity jurisdiction, *see SBL Enters.*, 2021 WL 2000365, at *3 (collecting cases in which courts in this Circuit dismissed actions for lack of subject matter jurisdiction where plaintiff alleged only residence and not citizenship of parties), this action must be dismissed, *Banks-Gervais v. Bd. of Elections*, No. 18-CV-5252, 2018 WL 10070504, at *2 (E.D.N.Y. Sept. 28, 2018) ("When a court lacks subject matter jurisdiction, dismissal is mandatory.").

### 2. Amount in Controversy

Diversity jurisdiction also requires an amount in controversy exceeding $75,000. 28 U.S.C. § 1332. "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Klaneski v. State Farm Mut. Auto. Ins. Co.*, No. 22-CV-1458, 2023 WL 4304870, at *6 (D. Conn. June 30, 2023). "In conducting this inquiry, courts in the Second Circuit apply a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Id.* But "the presumption is available only if the face of the complaint alleges facts plausibly suggesting the existence of claims aggregating over the jurisdictional minimum amount in controversy." *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364-65 (S.D.N.Y. 2019). "Conclusory allegations that the amount-in-controversy requirement is satisfied are insufficient." *Id.* "Where no amount is specified, this fact alone does not bar a finding that the jurisdictional amount has been met." *Burr ex rel. Burr v. Toyota Motor Credit Co.*, 478 F. Supp. 2d 432, 438 (S.D.N.Y. 2006). "In such cases, courts examine the nature of the claims, factual allegations within the pleadings, and the record outside the pleadings to determine the amount in controversy." *Id.*

Even if a presumption arises from the face of the complaint that the amount in controversy exceeds $75,000, "a defendant may rebut that presumption by demonstrating to a legal certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums." *Suarez v. Mosaic Sales Sols. US Operating Co., LLC*, 720 F. App'x 52, 53 (2d Cir. 2018) (summary order); *see Klaneski*, 2023 WL 4304870, at *6 ("If . . . it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, the suit will be dismissed.").

In the Amended Complaint, Plaintiff alleges "damages for conversion of personal property," (AC ¶ 74), including his construction tools and equipment, heirlooms, and family photo albums, (*id.* ¶¶ 47-48, 51), and "physical and emotional distress damages in an amount to be proven at trial," (*id.* ¶¶ 65, 79, 84, 90). The Amended Complaint does not allege the value of the personal property or the amount of damages sought, but asserts only that "[t]he amount in controversy exceeds $75,000." (*Id.* ¶ 5.) "[T]his allegation is conclusory and not entitled to the presumption of truth." *Ameer v. Fleet Mech. Sys.*, No. 18-CV-7655, 2019 WL 1949858, at *2 (S.D.N.Y. Apr. 17, 2019). "Plaintiff [must] allege[] . . . facts to support an inference that his damages satisfy the amount-in-controversy requirement for federal diversity jurisdiction." *Id.*

Because Plaintiff is *pro se*, however, I consider his letter listing the assets that Defendants have purportedly withheld from him and valuing them at $154,823. (*See generally* P's July 6 Letter.) As Janet points out, (ECF No. 25-2 ("Janet's Mem.") at 4), $89,400 of it comes from alleged conversion of "Bitcoins QR Code," (P's July 6 Letter at 1). While it might not seem plausible that eviction from Sharon's house could effect the conversion of a non-physical item such as Bitcoin, *see United States v. Phillips*, No. 22-CR-6058, 2022 WL 16990050, at *2 (W.D.N.Y. Nov. 17, 2022), ("Stored in digital wallets that contain a Bitcoin address and a QR

10

code with the public and private key embedded in the code, Bitcoin can be transferred through digital transactions in which the Bitcoin is sent to and received from Bitcoin addresses."), *report and recommendation adopted*, No. 22-CR-6058, 2023 WL 2775610 (W.D.N.Y. Apr. 4, 2023), digital keys used to access Bitcoin can be stored on printed QR codes, otherwise known as a paper wallet, *see* Kevin V. Tu, *Perfecting Bitcoin*, 52 Ga. L. Rev. 505, 548 (2018) ("Digital keys can be stored independently on a personal computer (a desktop wallet), dedicated hardware device (a hardware wallet), or printed QR codes (a paper wallet)."). Plaintiff's reference to "Bitcoins QR Code" could conceivably be referring to these paper wallets, although it is possible that the value of the QR Code or any Bitcoin stored on it could now be less than Plaintiff has alleged.

Even assuming, however, that the value of the "Bitcoins QR Code" is zero, leaving the personal property at a value of $65,423, Plaintiff also seeks – beyond damages for the loss of personal property – "damages flowing from . . . the wrongful eviction from his home, a breach of the lease/contract governing his occupancy and the infliction of emotional distress." (P's Opp. at 5; *see* AC ¶¶ 65, 79, 84, 90.) At least some of Plaintiff's claims – such as intentional infliction of emotional distress and wrongful eviction, *see In re Chavez*, 381 B.R. 582, 593 (Bankr. E.D.N.Y. 2008) (collecting cases where emotional distress damages awarded for wrongful eviction) – would permit emotional distress damages. Considering the nature of the claims and the factual allegations, *see Burr ex rel. Burr*, 478 F. Supp. 2d at 438, including Plaintiff's allegations that he "was prescribed medication for depression," (AC ¶ 57), and "meets regularly with a therapist to overcome the PTSD and trauma he now suffers from," (*id.*); *cf. Suarez*, 720 F. App'x at 54 (large compensatory damages award for "garden-variety emotional distress damages" was not supported, especially where plaintiff "fail[ed] to allege any required

medication or treatment"), it is reasonably probable that if Plaintiff prevails,[2] he might recover more than $75,000, and I cannot conclude to a legal certainty that he cannot.[3]

### B.     Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff requests leave to amend.  (*See* P's Opp. at 1.)  Plaintiff has already amended once, with the help of NYLAG.  I do not know why NYLAG did not enlighten Plaintiff on the distinction between residence and domicile, or why it did not urge Plaintiff to include specifics about the amount in controversy in the Amended Complaint, given that the latter issue was specifically discussed in Defendants' pre-motion letters, (ECF Nos. 15, 19), and at the pre-motion conference.  But because the domicile issue was not raised until Janet filed her instant motion, I will give Plaintiff the opportunity to amend to address that issue.

---

[2] I express no view on whether any of the claims are meritorious or even would survive a motion to dismiss, as issues going to the merits of a plaintiff's claims are not to be adjudicated as part of the determination as to whether the amount-in-controversy requirement is met.  *See, e.g., Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003); *Gordon v. Amica Mut. Ins. Co.*, No. 03-CV-1134, 2005 WL 123851, at *3 (D. Conn. Jan. 20, 2005).

[3] The prayer for relief also requests "lost income from Plaintiff's inability to work" and "punitive damages in an amount to be determined at trial."  (AC at 11.)  I do not determine whether Plaintiff might be entitled to lost wages as consequential damages for conversion of tools; whether punitive damages are available; or whether, had he brought a claim under N.Y. Real Prop. Acts. Law § 853, he would be entitled to treble damages.

Plaintiff may have until March 8, 2024, to file a Second Amended Complaint ("SAC"). If no SAC is filed by that date, or if the SAC does not cure the pleading with respect to citizenship and domicile, judgment will be entered and the case will be closed.

Additionally, on September 28, 2023, counsel for Janet submitted a letter suggesting that Plaintiff may have filed cases in state court that may bring the same claims against the same parties relating to the same conduct as alleged in this case. (ECF No. 27.) On September 29, 2023, I directed Plaintiff to advise if he wished to continue the federal case. (ECF No. 28.) On October 16, 2023, I instructed Plaintiff that, if any of the lawsuits are duplicative, in whole or in part, he should decide which one(s) he wants to pursue and/or which portions he wishes to pursue, and drop the duplicative case(s) or portions thereof. (ECF No. 30.) On October 18, 2023, a letter dated October 13, 2023, was docketed in which Plaintiff indicated that he wished to pursue the instant federal case, (ECF No. 31), but I remain unclear as to whether there are any duplicative cases. If Plaintiff files a SAC and duplicative actions are still a concern, counsel for Defendants shall update the Court no later than March 15, 2024.

## IV.     CONCLUSION

Because diversity jurisdiction under 28 U.S.C. § 1332 is not adequately pleaded, the claims in the case are DISMISSED without prejudice for lack of subject matter jurisdiction. *See Hernandez v. Conriv Realty Assocs.,* 182 F.3d 121, 123 (2d Cir. 1999) ("[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice."). Plaintiff has leave to replead, no later than March 8, 2024, to cure the jurisdictional issue. The Clerk is respectfully directed to terminate the pending motions, (ECF Nos. 24, 25).

**SO ORDERED.**

Dated: February 7, 2024
         White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.