UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

DANIEL KISS,

                      Plaintiff,

     -against-

JANET KENNY, DEBRA RUBIN,

                  Defendants.

-------------------------------------------------------X

**ORDER**

22 Civ. 10663 (CS)(JCM)

      Presently before the Court are a flurry of letters taking issue with *pro se* Plaintiff Daniel

Kiss' discovery demands, dated April 25, 2025 ("April 25, 2025 Demands"), and his revised

discovery demands, dated April 30, 2025 ("April 30, 2025 Demands"). (Docket Nos. 78, 79, 81,

83). Plaintiff responds to these objections and seeks the Court's approval of his expanded

interrogatories and an order directing Defendants Janet Kenny and Debra Rubin (collectively,

"Defendants") to respond to them. (Docket Nos. 80, 84). For the following reasons, the parties'

motions are granted in part and denied in part.

      It is undisputed that the April 25, 2025 Demands and the April 30, 2025 Demands exceed

the parameters of Local Rule 33.3. (Docket Nos. 78, 79, 80, 81, 83). The issue now before the

Court is whether they should be allowed. During the March 31, 2025 Status Conference,

Plaintiff informed the Court that he would not be taking depositions due to the cost associated

with them. In his May 2, 2025 letter, Plaintiff further explained that his expanded interrogatories

were a more practical means of obtaining relevant information because he lacks the financial

resources to conduct depositions. (Docket No. 80). Defendant Kenny opposes this request.

(Docket No. 81).[1] Defendant Rubin also asserts several interrogatories are "totally inappropriate as to their content" and reflect cross-examination questions. (Docket No. 83 at 1).

Local Rule 33.3(b) "permits the use of interrogatories if they are a more practical method of obtaining the information sought than a request for production or a deposition." *McConnell v. Pepp*, No. 89 Civ. 2604 (MJL), 1991 WL 50965, at *1 (S.D.N.Y. Apr. 3, 1991)[2] (directing defendants to answer specific interrogatories but not those calling for legal conclusions). While there is a mechanism to depose parties through the use of written questions, "[t]here are cases in which interrogatories may be preferable to deposition by written question." *Manigaulte v. Long Island Univ.*, CV 08-1853 (JS)(WDW), 2010 WL 11632628, at *3 (E.D.N.Y. Nov. 5, 2010), *aff'd sub nom. Manigaulte v. C.W. Post of Long Island Univ.*, 2010 WL 11632629 (E.D.N.Y. Dec. 10, 2010) (citing *McConnell*, 1991 WL 50965, at *1). In addition, if interrogatories are more practical, the parties may go beyond the bounds of Local Rule 33.3(a). *See CG3 Media, LLC v. Belleau Techs., LLC*, 1:21-cv-04607-MKV, 2022 WL 1172499, at *1 (S.D.N.Y. Apr. 20, 2022). In such a case, the Court examines "each interrogatory *seriatim*" to determine if it is a "more practical method of obtaining the information sought." *Roelcke v. Zip Aviation, LLC*, 15-CV-6284 (JGK)(JLC), 2020 WL 5752228, at *1-2 (S.D.N.Y. Sept. 25, 2020).

Given Plaintiff's *pro se* status and limited resources, the Court will permit Plaintiff to obtain information through the use of broader interrogatories rather than through depositions.[3]

---

[1] Defendant Kenny claims the Court "already ruled that Mr. Kiss cannot use interrogatories in lieu of depositions." (Docket No. 81 at 1). However, the Court never specifically ruled on whether the Plaintiff could use interrogatories in lieu of depositions.

[2] If Plaintiff does not have access to cases cited herein that are available only by electronic database, then he may request copies from Defendants' counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel must provide the pro se litigant with copies of such unpublished cases and other authorities as are cited in a decision of the court and were not previously cited by any party.").

[3] Defendant Kenny argues the local rules do not address a party's financial ability to pay and that if they did, the courts might require financial proof. (Docket No. 81 at 1). However, Plaintiff has *in forma pauperis* status, (Docket No. 5), and courts in this District have permitted *pro se* plaintiffs to issue interrogatories in lieu of depositions for

*Cardew v. Fleetwood*, No. 98 Civ. 4704 (SHS)(DFE), 1999 WL 1067867, at *1 (S.D.N.Y. Nov. 23, 1999), *on reconsideration*, 2000 WL 310362 (S.D.N.Y. Mar. 27, 2000); *see also Boomer v. Grant*, Nos. 00 CIV 4709 (DLC)(AJP), 00 CIV 5540 (DLC)(AJP), 2001 WL 1580237, at *1 (S.D.N.Y. Dec. 12, 2001) (permitting plaintiff to depose defendants through interrogatories and/or through depositions on written questions).  Such interrogatories will not be subject to the subject matter limitation in Local Civil Rule 33.3. *See Riddle v. Liz Claiborne, Inc.,* No. 00 Civ. 1374 (MBM)(HBP), 2003 WL 21982967, at *1 (S.D.N.Y. Aug. 19, 2003).  In addition, the Court will grant Plaintiff permission to serve interrogatories beyond the 25 permitted by Rule 33(a)(1). *See id.* (permitting the *pro se* plaintiff to serve additional interrogatories after her initial 25 interrogatories, in lieu of a deposition).

The Court has reviewed the April 25, 2025 Demands and April 30, 2025 Demands in light of this ruling, and its specific findings relating to each request are set forth herein.

## I.   DISCOVERY DEMANDS FOR DEFENDANT JANET KENNY

With respect to the demands addressed to Defendant Janet Kenny, the Court makes the following rulings.

1. Interrogatory Numbers 3, 4, 5, 6, 8 and 9 of the April 30, 2025 Demands seek factual information. (Docket No. 79-1).  Therefore, Defendant Kenny must answer them as written.

2. The Court has also reviewed the April 30, 2025 Demands and takes the liberty to modify some of the interrogatories so that they do not ask for legal conclusions, are clearer, and allow Plaintiff to obtain the relevant information he seeks.  As a result, Defendant Kenny must respond to the following modified interrogatories:

---

financial reasons. *See Riddle v. Liz Claiborne, Inc.,* No. 00 Civ. 1374 (MBM)(HBP), 2003 WL 21982967, at *1 (S.D.N.Y. Aug. 19, 2003).

- Interrogatory Number 1: On December 18, 2019, you and six others arrived at Sharon Kenny's house to collect her valuables. Were Plaintiff and his wife present at the time? Did Plaintiff and his wife offer any assistance, and did Plaintiff specifically help load the items into your vehicles?

- Interrogatory Number 2: From December 18, 2019, to February 13, 2020, did you allow the Plaintiff and his spouse to freely remove their personal belongings from the house and the shed?

- Interrogatory Number 10: Debra Rubin stated in her deposition: "Why don't we just let him go? Janet told me there was nothing in the shed that resembled tools, even though he talked about them a lot." Please explain why you refused to return the Plaintiff's property.

- Interrogatory Number 12: "In your deposition, you stated: 'And they had put a van, a green van pulled up to the house, and it was passed – the back of the van was inside the garage, so you could not see what was going on. That is what prompted my phone call.' On the day you called 911, five police officers saw that the van was not inside the garage but parked approximately 20 feet away. The garage was full of items, making it physically impossible for a vehicle to enter." Why did you say this?

- Interrogatory Number 13: "Debra Rubin's deposition states: 'I know that Janet had asked him to stay there' and 'I understand that Janet is working with a lawyer to work out an arrangement.'" Did you tell Debra that you had asked Plaintiff and his wife to stay in the house after your father left the residence?

- Interrogatory Number 14: Did you or any other individual provide the Plaintiff with written or verbal notice of termination of his tenancy at the residence prior to February 13, 2020? When and how did you provide this notice? What did the notice say?

- Interrogatory Number 15: Clarify whether, on February 13, 2020, you told law enforcement that you were the "executor of Sharon Kenny's estate and asserting that you had legal ownership or control over the residence at that time. If you maintain that these claims were true, provide evidence to support your legal status and authority."

- Interrogatory Number 16: Did Sharon Kenny's friend, Diane LaGreca, help you search for documents and sort through Sharon Kenny's belongings in the house after her passing? Provide specific details about her involvement, including what items or documents she identified.

- Interrogatory Number 17: "In your deposition, you stated that the camera footage does not show whether the Plaintiff placed anything into his van on February 13, 2020. Despite this, you called the police and accused the Plaintiff and his wife of burglarizing the home." Why do you think Plaintiff and his wife were burglarizing the home on February 13, 2020?

- Interrogatory Number 18: "After February 13, 2020, the Plaintiff received a text message from Debra stating: 'She said the estate lawyer will be in touch with you regarding your property' and 'You just need to be a bit patient to work it out.'" Is this statement accurate? If not, please explain. Also, based on your best knowledge, could the Plaintiff retrieve his property after probate? Did you tell

this to Debra?  Please provide the name and address of the estate lawyer that was supposed to contact Plaintiff.

- Interrogatory Number 19: "Explain the contradiction between your statement in deposition that there were no documents in the house with the Plaintiff's name and your admission that you possessed his immigration file and medical records 'relating to him.'"  Please explain why you did not return these documents.

- Interrogatory Number 20: "In Diane LaGreca's deposition, she stated: 'Janet asked the Plaintiff to stay at the house to watch over it, to prevent vandalism, and because she didn't want it to be empty.'"  Did you ask the Plaintiff to stay in the house, or did you ask him to move out?

- Interrogatory Number 21: "In Diane LaGreca's deposition, she stated: 'I was in the presence of Janet and Denise, as I'll call her, the day that I was there when she was trying to talk Denise into giving up her apartment that was nearby and just come live at the house permanently.'  Initially, you encouraged Plaintiff Daniel Kiss and his wife to stay in the house and pay rent."  Later, however, you called the police on them, and had them removed.  Please explain your actions.

- Interrogatory Number 23: Diane LaGreca provided a written statement: "Janet Kenny NEVER gave Dano K. the opportunity to collect HIS belongings.  He was told NOT to remove anything until she said so."  Did you tell Plaintiff not to remove his belongings without your permission?

- Interrogatory Number 24: "[Y]ou claim to have returned all the items you found, which happen to be [the same items that] the police saw during their intervention. However, the rest of the Plaintiff's property, which the police did not see at that

time, remained in your possession." How do you explain the limited return of Plaintiff's property? Did the fact that the police saw only some items influence your decision?

- Interrogatory Number 25: "[Y]ou told the police that the Plaintiff and his wife did not live in the house and that you did not allow them to enter the property, yet they came there to commit theft." If they didn't live there, do you know why they had their laptop, cash, glasses, and slippers, in the house, and laundry in the washing machine?

3. Interrogatory Number 7 in the April 30, 2025 Demands properly reads as a request for production of documents and Defendant Kenny must produce any and all responsive documents.

4. Interrogatory Numbers 11 and 22 in the April 30, 2025 Demands are not relevant, and thus, Defendant Kenny need not respond to them.

## II. DISCOVERY DEMANDS FOR DEFENDANT DEBRA RUBIN

With respect to the demands addressed to Defendant Debra Rubin, the Court makes the following rulings.

1. Interrogatory Numbers 1, 2, 3, 5, 8, 9, 10, 11, 12, 13, 17, 18, 20 and 24 in the April 25, 2025 Demands seek factual information. (Docket No. 78-2). Thus, Defendant Rubin must answer them as written.

2. The Court has reviewed the April 25, 2025 Demands and takes the liberty to modify some of the interrogatories so that they do not ask for legal conclusions, are clearer, and allow Plaintiff to obtain the relevant information he seeks. As a result, Defendant Rubin must respond to the following modified interrogatories:

- Interrogatory Number 4: "In your deposition, you stated, 'I know that Janet had asked [Plaintiff] to stay there,' and 'I understand that Janet is working with a lawyer to work out an arrangement.'" Did Janet inform you that she had requested that Plaintiff and his wife remain in the house after your father vacated the premises? Please provide any additional clarifications or relevant details regarding your communication with Janet on this matter.

- Interrogatory Number 6: "Did you suggest to Janet that the Plaintiff should be allowed to retrieve his belongings from the house?"

- Interrogatory Number 14: "In your deposition, you stated that you do not know whether Sharon ever lived with Plaintiff." Are you maintaining your testimony as presented? Was your statement influenced by considerations that might benefit you and Janet? Did Sharon ever tell you that she lived with Plaintiff at any time?

- Interrogatory Number 16: "In your deposition, you stated, 'Daniel Kiss took money from Sharon,' alleging that these funds originated from a joint business operated by the Plaintiff and Sharon Kenny and were purportedly sent to his family in his country of origin without Sharon's knowledge. According to your account, this led to the termination of their relationship: 'And so she ended the relationship.'" Clarify the factual basis for your allegations.

- Interrogatory Number 21: "Did you allow the Plaintiff, to pack his belongings but prevent him from removing them from the house, citing the ongoing probate process? Evidence includes an audio recording in which you stated: 'It's just that the legal aspect is, once a person dies, you cannot touch the items. You have to leave them there until . . . Any legal practice goes through, and everything is

cleared and taken away . . . You take what is yours, but you have to do it in the proper order, and she won't keep her things.'" Please clarify the reason for not allowing Plaintiff to remove his belongings from the house.

- Interrogatory Number 22: "Diane LaGreca testified: 'Debra as well kept saying that, well, when they – after probate or upon probate, he'll have a chance to collect his items.'" Did you state that Plaintiff could only retrieve his belongings "after probate"?

3. Defendant Rubin does not need to answer Interrogatory Numbers 7, 19 and 23 in the April 25, 2025 Demands because they call for legal conclusions.

4. Interrogatory Numbers 15 and 25 in the April 25, 2025 Demands are not relevant, so Defendant Rubin need not respond to them.

## III. SANCTIONS

Defendant Kenny also asks the Court to direct Plaintiff to reimburse her for the cost of writing the letters. (Docket No. 78 at 2; Docket No. 79 at 2; Docket No. 81 at 2). It is clear from Plaintiff's April 30, 2025 e-mail to counsel and his May 2, 2025 letter to the Court that Plaintiff is trying to comply with the local rules and work with Defendants. (Docket Nos. 79-2, 80). These demands do not appear to be an attempt to harass Defendants but rather *pro se* Plaintiff's effort to comply with discovery rules. In addition, Plaintiff has *in forma pauperis* status. (Docket No. 5). Courts regularly decline to issue monetary sanctions against a plaintiff who filed a lawsuit *in forma pauperis*. *See Lacy v. Principi*, 317 F. Supp. 2d 444, 449 (S.D.N.Y. 2004) (citation omitted); *see also Baez v. Kennedy Child Study Ctr.*, No. 11 Civ. 7635 (JMF), 2013 WL 705913, at *2 (S.D.N.Y. Feb. 27, 2013) (collecting cases) (considering plaintiff's *pro se* and *in forma pauperis* status); *see also Cadet v. All. Nursing Staffing of New York, Inc.*, 21 Civ. 3994

(KPF), 2024 WL 81487, at *12 (S.D.N.Y. Jan. 8, 2024), *appeal dismissed,* 24-315, 2024 WL

5392746 (2d Cir. June 18, 2024) (citations omitted) (same).  Here, Plaintiff has tried to comply

with the local rules and has responded to Defendants' objections by revising his interrogatories.

(Docket No. 79-2).  There is no indication that Plaintiff has ignored court orders or is serving

these discovery demands to harass Defendants.  Accordingly, sanctions are not warranted here.

## IV.  CONCLUSION

Accordingly, the Court grants in part and denies in part the parties' motions.  By June 6,

2025, Defendants are directed to respond to the April 25, 2025 Demands and the April 30, 2025

Demands as set forth herein.  The Clerk of Court is respectfully requested to terminate the

pending motions (Docket Nos. 78 and 79), and mail a copy of this Order to the *pro se* Plaintiff.

Dated:    May 9, 2025
          White Plains, New York

                                                    SO ORDERED:

                                                    _____
                                                    JUDITH C. McCARTHY
                                                    United States Magistrate Judge